[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

————————————————

No. 12-10974
Non-Argument Calendar

————————————————

D.C. Docket No. 3:10-cv-01172-HLA-JRK

MELBA J. GRAY,

Plaintiff - Appellant,

versus

CITY OF JACKSONVILLE, FLORIDA,

Defendant - Appellee.

————————————————

Appeal from the United States District Court
for the Middle District of Florida

————————————————

(October 9, 2012)

Before MARCUS, WILSON and PRYOR, Circuit Judges.

PER CURIAM:

Melba Gray, an African-American female, appeals the district court's grant

of summary judgment in favor of her employer, the City of Jacksonville (City), on

her race discrimination, gender discrimination and retaliation claims brought

pursuant to Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.*, 42

U.S.C. §§ 1981–83, and the Florida Civil Rights Act (FCRA), Fla. Stat. §§ 760.01

*et seq*.  She argues that (1) she presented evidence sufficient to establish a prima

facie case of pay discrimination as to her race and her gender, and (2) she

presented evidence sufficient to defeat summary judgment on her claim of

retaliation.  After review of the briefs and record, we affirm.

## I. Background

Gray began working for the City in October 1999.  In September 2006, she

was promoted to the position of account technician in the City's Environmental

Quality Division, Petroleum Cleanup Branch (Branch), where her primary duty

was to support Tommy McCarty, a white male, in his position as accountant junior.

The gravamen of her pay-disparity claim is that when McCarty left the Branch in

2006, she assumed his duties and performed all of the work he had previously

performed as accountant junior, but was never given a concomitant raise in pay,

nor promoted to the actual position of accountant junior.  She also alleges that she

was denied out-of-class pay during this time and that, when she requested overtime

to permit her to perform both her duties as account technician and McCarty's

2

duties as accountant junior, her requests were routinely denied. According to

Gray, these denials of overtime and extra pay were discriminatory because Paul

Parente, a white male coworker, did receive out-of-position work and pay for

covering for a coworker who had taken maternity leave.

In April 2009, Gray first voiced concerns that she was being discriminated

against on account of her race and gender to her supervisor, Allene Rachal, and the

Chief of the Environmental Quality Division, Vince Seibold. She alleges that

thereafter her superiors at the Branch engaged in a series of retaliatory attacks upon

her. She contends that following her complaints of discrimination, Rachal began to

send her derogatory emails, became critical of her work in front of coworkers,

excluded her from weekly meetings regularly attended by the entire Branch staff,

took away duties regarding the review of work orders, and forced her to perform

filing duties for two white, male colleagues. Gray also alleges that, after a dispute

with Rachal at a February 2010 staff meeting, she was placed on administrative

leave and issued a final written reprimand. Though Gray resorted to her union's

grievance protocol and the final written reprimand was eventually rescinded, the

day after her grievance was filed, Gray claims to have been shown a photograph of

a horse bridle by a coworker, Pattie Jones. According to Gray, the horse bridle had

been hanging in Rachal's office and Rachal had told Jones that she intended to "tame [Gray's] big, black ass with it."[1]

When her administrative charge of discrimination with the EEOC brought no redress, Gray filed the instant cause of action.  The district court granted summary judgment for the City, finding that Gray had failed to establish a prima facie case of either pay discrimination or retaliation.  The instant appeal followed.

## II.  Discussion

We review the district court's grant of summary judgment *de novo*, applying the same legal standards as the district court.  *Chapman v. AI Transp.*, 229 F.3d 1012, 1023 (11th Cir. 2000) (en banc).  We affirm a district court's grant of summary judgment when, viewing the evidence in the light most favorable to the nonmoving party, the record shows that there is no genuine dispute as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *see Alvarez v. Royal Atl. Developers, Inc.*, 610 F.3d 1253, 1263–64 (11th Cir. 2010).  And though the nonmoving party can survive summary judgment by demonstrating that there exists some issue of fact to be decided at

---

[1]  Though Gray's complaint states the actual phrase used was "big black ass," in a document attached to her amended Equal Employment Opportunity Commission (EEOC) complaint, she claimed Jones told her Rachal had stated she intended to use the bridle to "tame [Gray's] big hostile ass."  In her deposition, Gray admitted that Jones never used the word "black" but had only referred to "tam[ing] [m]y big ass."  At any rate, Jones denies ever having made any such statement, and asserts that she only took a picture of the horse bridle after Gray asked her to do so.

trial, "[a] mere scintilla of evidence in support of the nonmoving party will not suffice to overcome a motion for summary judgment." *Young v. City of Palm Bay*, 358 F.3d 859, 860 (11th Cir. 2004).

Before proceeding to the merits of Gray's claims, we note preliminarily that the elements of a § 1981 race or gender discrimination claim are identical to those of a Title VII disparate treatment claim and need not be analyzed separately. *Rice-Lamar v. City of Fort Lauderdale*, 232 F.3d 836, 843 n.11 (11th Cir. 2000). Likewise, federal cases construing Title VII are applicable to FCRA claims. *Harper v. Blockbuster Entm't Corp.*, 139 F.3d 1385, 1387 (11th Cir. 1998). Synthesizing these two principles, it follows that Gray's claims of discrimination and retaliation under all three statutory frameworks (Title VII, § 1981, and the FCRA) must stand—or fall—together.

### A. Discrimination

Title VII proscribes discrimination against any employee with respect to compensation, terms, or privileges of employment because of that employee's race or gender. 42 U.S.C. § 2000e-2(a)(1). Where, as here, an employee bases her discrimination claim on circumstantial evidence, we employ the traditional burden-shifting framework promulgated in *McDonnell Douglas Corp. v. Green*, 411 U.S.

792, 93 S. Ct. 1817 (1973).[2]  "Under this framework, the plaintiff first has the

burden of establishing a prima facie case of discrimination, which creates a

rebuttable presumption that the employer acted illegally." *Wilson v. B/E*

*Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004).

Once the plaintiff establishes a prima facie case, "the burden shifts to the

employer to 'articulate some legitimate, nondiscriminatory reason'" for the

employment decision at issue. *Crawford v. Carroll*, 529 F.3d 961, 976 (11th Cir.

2008) (quoting *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824); *see St.*

*Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 510–11, 113 S. Ct. 2742, 2749 (1993)

(noting that the role of the *McDonnell* presumption is to "forc[e] the defendant to

come forward with some response" to the plaintiff's claim of discrimination).  If

the employer meets this burden, the plaintiff must show that the proffered reasons

were pretextual—that there are "such weaknesses, implausibilities, inconsistencies,

incoherencies, or contradictions in the employer's proffered legitimate reasons for

its action that a reasonable factfinder could find them unworthy of credence."

*Combs v. Plantation Patterns*, 106 F.3d 1519, 1538 (11th Cir. 1997) (internal

---

[2]  Though admittedly "the *McDonnell Douglas* framework is not, and never was intended
to be, the *sine qua non* for a plaintiff to survive a summary judgment motion in an employment
discrimination case," *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011),
Gray has proffered no alternative theory or evidence sufficient to create a triable issue of fact
concerning the City's discriminatory intent, *see id.* (noting that summary judgment is improper
"so long as the circumstantial evidence raises a reasonable inference that the employer
discriminated against the plaintiff").

quotation marks omitted).  At this juncture, the plaintiff's burden "merges with the

ultimate burden of persuading the court that she has been the victim of intentional

discrimination," *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 256, 101 S.

Ct. 1089, 1095 (1981), and "the question becomes whether the evidence,

considered in the light most favorable to the plaintiff, yields the reasonable

inference that the employer engaged in the alleged discrimination," *Smith*, 644

F.3d at 1326.  If so, summary judgment cannot issue.

### 1.  Prima Facie Case

As a general rule, the plaintiff's prima facie burden is not an onerous one.

*Vessels v. Atlanta Indep. Sch. Sys.*, 408 F.3d 763, 769 (11th Cir. 2005) (per

curiam).  A plaintiff establishes a prima facie case of pay discrimination by

demonstrating that: (1) she was a member of a protected class; (2) she received low

wages; (3) similarly situated employees outside the protected class received higher

pay; and (4) she was qualified to receive the higher pay.  *Cooper v. Southern Co.*,

390 F.3d 695, 735 (11th Cir. 2004), *overruled on other grounds*, *Ash v. Tyson

Foods, Inc.*, 546 U.S. 454, 457, 126 S. Ct. 1195, 1997 (2006).

The district court held that Gray failed to make a prima facie showing

because she could not present similarly situated comparators who were treated

more favorably than she.  We agree.  "To make a comparison of the plaintiff's

treatment to that of non-minority employees, the plaintiff must show that [s]he and the employees are *similarly situated in all relevant respects*." *Holifield v. Reno*, 115 F.3d 1555, 1562 (11th Cir. 1997) (per curiam) (emphasis supplied); *see Cooper*, 390 F.3d at 735; *see also Mulhall v. Advance Sec., Inc.*, 19 F.3d 586, 598 (11th Cir. 1994) (noting that a plaintiff makes out a prima facie case by showing "she is [a minority] and her job was substantially similar to higher paying jobs occupied by [non-minorities]"); *Miranda v. B & B Cash Grocery Store, Inc.*, 975 F.2d 1518, 1529 (11th Cir. 1992) (explaining, in a gender-discrimination case, that the comparator analysis asks whether the "job [the plaintiff] occupied was similar to higher paying jobs occupied by males").

Here, the evidence presented fails to raise a genuine issue of material fact as to whether Gray was paid less for work "substantially similar" to that of her putative comparators, McCarty and Parente.  To begin with, Gray produced the following evidence in support her claims: her own affidavit, in which she claims she was asked to take over McCarty's job duties in addition to performing her own; an email sent out by McCarty prior to his departure in which he told Branch employees that "their efforts in helping [Gray] 'hold down the fort' until help arrives will be greatly appreciated"; and certain work orders signed by Gray on the signature line titled "FDEP [Florida Department of Environmental Protection]

Manager Signature," along with examples of where McCarty had signed on the same line.

With regard to Gray's claim in her affidavit that she took over McCarty's duties upon his departure, Gray admitted that she had no knowledge of McCarty's duties with regard to invoices, work orders, or documents that required correction and revision; the district court could therefore properly disregard her averment for want of personal knowledge.  Fed. R. Civ. P. 56(c)(4) (setting forth the requirement that an affidavit used to "oppose a [summary judgment] motion must be made on personal knowledge"); *see Macuba v. Deboer*, 193 F.3d 1316, 1322–23 (11th Cir. 1999).  And as to Gray's having signed certain worker orders on the "FDEP Manager Signature" line, that fact changes nothing: the City's uncontroverted evidence demonstrates that the "FDEP Manager" was expected to assure work-order compliance with FDEP's standard operating procedures, and Gray herself admitted at arbitration that she neither checked work orders for compliance with standard operating procedures nor for compliance with guidance from FDEP.

All of which leaves only the email from McCarty advising the Branch that Gray would "hold down the fort" after his departure.  Gray asserts that this email is sufficient to create a question of fact as to whether her employment was

9

"substantially similar" to McCarty's, but we do not read it quite so expansively as she would have us.  Given the structure of the Branch and the fluid nature of task assignments during this transitory period, we find the passing reference to "hold[ing] down the fort" to be of marginal probative value in ascertaining the extent to which Gray actually assumed McCarty's day-to-day responsibilities following his departure.  To the extent the email implies that Gray would be taking over all of McCarty's duties—a tall order, to be sure, given that Gray could not even enunciate the substance of many of those duties she was supposedly assuming—it is a "mere scintilla of evidence [that] . . . will not suffice to overcome a motion for summary judgment."  *Young*, 358 F.3d at 860.

Other evidence adduced by the City further augurs against a finding that Gray has created an issue of fact as to whether McCarty is a valid comparator for Title VII purposes.  After all, McCarty exercised unilateral authority in reconciling invoices and work orders and making any necessary corrections himself, but Gray acknowledged that she did not make any such corrections to invoices or work orders, and that all of her work was at some point reviewed for accuracy by a superior.  Further, Gray admitted in her deposition that some of McCarty's work was given out to *other employees*, a fact which renders impossible her claim that she assumed "all" of McCarty's work upon his departure from the Branch.  These

10

facts, coupled with Gray's asthenic presentation of affirmative evidence in support of her comparator theory, leave us with little doubt that in establishing a comparator "similarly situated in all relevant respects" to her position at the Branch, Gray has fallen well short of the mark.

Gray additionally claims the district court applied the wrong legal standard when it intimated that the "similarly situated employee" prong of a prima facie Title VII claim required her to prove that her position was "substantially equal" or "substantially similar" to her proposed comparators.  She submits that the similarity calculus in Title VII cases is "relaxed," *see Mulhall*, 19 F.3d at 598; *Miranda*, 975 F.2d at 1526, and merely requires a showing that the comparators "perform[ed] jobs similar to plaintiff's," *Cooper*, 390 F.3d at 735, or "shared the same type of tasks" as the plaintiff, *Miranda*, 975 F.2d at 1529.[3]  We are not persuaded.  After all, even assuming that the trial court applied the wrong standard, any victory for Gray would be pyrrhic, because she cannot meet the relaxed standard she urges us to apply here and would thus be unable to establish a prima facie case of discrimination in any event.  *United States v. $121,100.00 in U.S. Currency*, 999 F.2d 1503, 1507 (11th Cir. 1993) ("This court will affirm a grant of

---

[3] We note incidentally that while Gray claims the proper standard to be applied is set forth by our decisions in *Miranda* and *Mulhall*, one of those cases in fact applied the "substantial similarity" formulation Gray so vociferously opposes here.  *See Mulhall*, 19 F.3d at 598 (explaining that a prima facie case in a Title VII gender-discrimination case requires the plaintiff to show "that her job was substantially similar to higher paying jobs occupied by males").

summary judgment if it is correct for any reason."). Put anther way, whether the

district court applied the "relaxed similarity" or "substantially similar" standard to

Gray's claims is a point without a difference, for under either mode of analysis, the

same result obtains: Gray's discrimination claims cannot survive summary

judgment.

Before moving further, we note that Gray's peripheral claims as to her Title

VII discrimination claim are without merit. First, though Gray now claims that

McCarty was in fact performing the duties of an account technician while being

paid the salary of an accountant junior, in the district court her sole argument was

the converse—that she was in fact performing the duties of an accountant junior,

above her official station of account technician. Of course, having failed to raise

this theory below, Gray cannot now raise it here. *Juris v. Inamed Corp.*, 685 F.3d

1294, 1325 (11th Cir. 2012) ("A federal appellate court will not, as a general rule,

consider an issue that is raised for the first time on appeal."). And as for her

attempt to establish Parente—the coworker who was approved for overtime pay

while a fellow Branch employee was out on maternity leave—as a comparator,

Gray has adduced no evidence sufficient to slake Title VII's comparator-similarity

requirement. *Earley v. Champion Int'l Corp.*, 907 F.2d 1077, 1081 (11th Cir.

1990) (noting that "conclusory allegations and assertions will not suffice" to defeat

summary judgment).  What is more, the City has provided evidence that Gray did in fact receive overtime pay during the relevant time period, a fact that undermines Gray's argument that she was treated differently than Parente.

Further, Gray's claim that the City discriminated against her through inconsistent application of work rules (i.e., failing to offer her out-of-class pay) fails, too.  For example, though Gray argues that she was eligible for, but did not receive, out-of-class pay, she is wrong: pursuant to Article 17.1 of her collective bargaining agreement, an employee "must meet the qualifications of the higher level classification" before she can be assigned to work in a higher classification for a period exceeding 20 days.  Yet the City presented evidence that the accountant junior position requires at least 21 hours of college-level accounting course work, and Gray admitted that she lacked such educational experience.  We fail to apprehend how the City can be deemed to have discriminated against Gray by failing to grant her out-of-class pay for which she did not qualify.  Thus, even if Gray had supported her theory that Parente is an appropriate comparator with evidence sufficient to defeat summary judgment—which she has not—her argument regarding inconsistent application of work rules would fail because she has failed to show that the City's application of its work rules was, in fact, *inconsistent.  See Berg v. Fla. Dep't of Labor & Emp't Sec.*, 163 F.3d 1251, 1255

13

(11th Cir. 1998) (noting that "inconsistent application of employment policies [may be] circumstantial evidence of discrimination").

### 2.  Legiminate, Non-Discriminatory Purpose

Even if Gray had established a prima facie case of race or gender discrimination, summary judgment would be warranted in any event.  Under the *McDonell Douglas* framework, once the plaintiff establishes a prima facie case of discriminatory animus, "the burden shifts to the employer to articulate some legitimate, nondiscriminatory reason for the adverse employment action" at issue. *Crawford*, 529 F.3d at 976 (internal quotation marks omitted). "[T]he defendant's burden of rebuttal is exceedingly light . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Cooper*, 390 F.3d at 725 (alteration in original) (internal quotation marks omitted).  If the employer produces a legitimate reason, "the burden then shifts back to [the employee] to show that [the employer's] supposedly independent reasons were, in reality, merely a pretext for discrimination." *Schaaf v. SmithKline Beecham Corp.*, 602 F.3d 1236, 1244 (11th Cir. 2010).

Turning to the case at hand, it is plain that the City articulated legitimate, non-discriminatory reasons for its failure to promote Gray to McCarty's position,

14

and that Gray thereafter failed to adduce any evidence whatever that the City's stated reasons were pretextual. *See Chapman*, 229 F.3d at 1024–25 ("If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim."); *see also Combs*, 106 F.3d at 1529.  Here, the City presented evidence that budgetary funding for the Branch decreased from over $1,500,000 in 2006 to $963,442 in 2010.  The City submits that this decrease in funding is the reason it elected not to fill McCarty's position after his departure, and Gray has offered nothing in rebuttal to suggest that this justification was disingenuous or pretextual. We are mindful of the delicate balancing attendant to any enterprise's allocation of often-scarce financial resources; accordingly, in the absence of any evidence suggestive of racial impetus or otherwise giving us cause to doubt the stated reasons for a given employment decision, we are loathe to second-guess that decision or to manufacture an inference of discrimination where the record fairly admits of none.  *See, e.g.*, *Wilson*, 376 F.3d at 1092 ("The role of this Court is to prevent unlawful hiring practices, not to act as a super personnel department that second-guesses employers' business judgments." (internal quotation marks omitted)); *Beard v. Annis*, 730 F.2d 741, 744 (11th Cir. 1984) (per curiam) ("This

court does not sit in judgment over whether the defendants made the right

employment decision in deciding to reduce [the plaintiff's] hours instead of the

hours of the two secretaries, only whether the decision was made on the basis of

race.")*.  That being so, and in light of Gray's failure to reveal "such weaknesses,

implausibilities, inconsistencies, incoherencies, or contradictions in the employer's

proffered legitimate reasons for its action that a reasonable factfinder could find

them unworthy of credence," *Combs*, 106 F.3d at 1538, we find that the district

court properly entered summary judgment for the City on Gray's discrimination

claims.

## B. Retaliation

Gray also contends that the City violated Title VII by retaliating against her

in the wake of her complaints regarding invidious discrimination at the Branch in

April 2009 and her EEOC charge of discrimination in June 2009.  Title VII's

retaliation provision prohibits an employer from retaliating against an employee in

response to that employee's charge of discrimination or other attempt to enforce

his or her rights under the Act.  42 U.S.C. § 2000e-3(a).  To establish a prima facie

case of Title VII retaliation, a plaintiff must show that (1) she engaged in

statutorily protected activity; (2) she suffered a materially adverse employment

action; and (3) there was a causal link between the protected activity and the

materially adverse employment action.  *See Dixon v. Hallmark Cos., Inc.*, 627 F.3d

849, 856 (11th Cir. 2010); *Goldsmith v. Bagby Elevator Co., Inc.*, 513 F.3d 1261,

1277 (11th Cir. 2008).  Gray argues that Rachal, her supervisor at the Branch,

retaliated against her on five discrete occasions: (1) by informing her in front of

her coworkers that she was no longer needed at weekly staff meetings, despite the

fact that such meetings were regularly attended by the entire staff of the Branch;

(2) by taking away her work-order duties following Gray's meeting with Rachal on

May 21, 2009; (3) by forcing Gray to perform filing work for two white, male

colleagues in June 2009 after she had been promoted from a position that included

filing duties in 2006; (4) by placing her on administrative leave and filing a final

written reprimand after a dispute at a staff meeting in February 2010; and (5) by

hanging a horse bridle on a doorknob at the Branch office and indicating to a

coworker that the purpose of such bridle was to "tame [Gray's] big ass."

     To demonstrate she suffered a materially adverse employment action, Gray

must point to actions taken in retaliation against her "that would have been

materially adverse to a reasonable employee . . . , [which] . . . means that the

employer's actions must be harmful to the point that they could well dissuade a

reasonable worker from making or supporting a charge of discrimination."

*Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53, 57, 126 S. Ct. 2405, 2409

(2006).  "We have been careful to recognize that Title VII does not require proof of direct economic consequences in all cases."  *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012) (internal quotation marks omitted).  That said, "not all conduct by an employer negatively affecting an employee constitutes adverse employment action."  *Webb-Edwards v. Orange Cnty. Sheriff's Office*, 525 F.3d 1013, 1031 (11th Cir. 2008).  Moreover, the employee's subjective view of the adversity accompanying a particular action is not dispositive or even necessarily probative; rather, "the employment action must be materially adverse as viewed by a reasonable person in the circumstances."  *Butler v. Ala. Dep't. of Transp.*, 536 F.3d 1209, 1215 (11th Cir. 2008) (quoting *Davis v. Town of Lake Park*, 245 F.3d 1232, 1239 (11th Cir. 2001)); *see Cotton v. Cracker Barrel Old Country Store, Inc.*, 434 F.3d 1227, 1231 (11th Cir. 2006) (noting that a cognizable adverse employment action "constitutes a significant change in employment status, such as hiring, firing, failing to promote, reassignment with significantly different responsibilities, or a decision causing a significant change in benefits").  Finally, and as we have often said, to prove a materially adverse employment action, "an employee must show a *serious and material* change in the terms, conditions, or privileges of employment."  *Holland*, 677 F.3d at 1057 (emphasis in original) (quoting *Davis*,

18

245 F.3d at 1239); *see Howard v. Walgreen Co.*, 605 F.3d 1239, 1245 (11th Cir. 2010) (same); *Butler*, 536 F.3d at 1216 (same).

Once a plaintiff demonstrates that she suffered a materially adverse employment action, she must then show that the adverse action was causally related to her statutorily protected activity.  To do so, "a plaintiff merely has to prove that the protected activity and the negative . . . action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (internal quotation marks omitted).  In making this showing, the plaintiff can rely solely upon temporal proximity between the statutorily protected conduct and adverse employment action; however, "mere temporal proximity, without more, must be 'very close.'" *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (per curiam) (quoting *Clark Cnty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273, 121 S. Ct. 1508, 1511 (2001)).  "Even a three-month interval between the protected expression and the employment action . . . is too long." *Brown v. Ala. Dep't of Transp.*, 597 F.3d 1160, 1182 (11th Cir. 2010).  "Thus, in the absence of other evidence tending to show causation, if there is a substantial delay between the protected expression and the adverse action, the complaint of retaliation fails as a matter of law." *Thomas*, 506 F. 3d at 1364.

19

Having set forth the proper legal standard applicable to Gray's retaliation claims, it is clear that the district court properly granted summary judgment. First, Gray's allegations that she was told in front of coworkers that she was no longer needed in weekly staff meetings and that she was temporarily assigned to work in the file room, while included in her complaint, were not developed in her response to the City's motion for summary judgment nor supported by any record evidence whatsoever. As such, they easily succumb to summary judgment. *United States v. Trainor*, 376 F.3d 1325, 1334 n.5 (11th Cir. 2004) ("[E]ven in the civil context of summary judgment, 'conclusory allegations without specific supporting facts have no probative value.'" (quoting *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir. 2000))). As to Gray's claim that the removal of her work-order duties was retaliatory, Gray failed to make this argument below and we decline to consider it for the first time here. *Juris*, 685 F.3d at 1325.

In any event, and even if she had raised them below, the filing-room assignment and removal of Gray's work-order duties are a far cry from the "unusual instances" in which we have held a change in work duties without an any tangible harm to be "so substantial and material that [they do] indeed alter the terms, conditions, or privileges of employment." *Davis*, 245 F.3d at 1245 (internal quotation marks omitted); *see Holland*, 677 F.3d at 1058 (noting that a permanent

reassignment with "*significantly* different duties" and a reduction in both prestige and responsibility would suffice (emphasis added)).  That is especially so in light of Gray's concession that she contacted Rachal specifically to complain that her work-order duties had left her saddled with more work than she could handle.  The City's evidence demonstrates that Gray's work-order duties were removed to accommodate her concerns regarding being overloaded with work.  We are hard pressed to fathom how an employer's removal of work duties, undertaken in response to an employee's complaint that she is overwhelmed with work, could in any way be deemed "adverse," much less retaliatory.

Gray's final two alleged retaliatory incidents share the same fate, though for different reasons.  Admittedly, whether Gray's placement on administrative leave after the February 2010 staff meeting or the March 2010 horse-bridle incident qualify as adverse employment actions present more nettlesome issues than those previously addressed.  Thankfully, however, we need not consider whether these incidents would constitute adverse employment actions because Gray has wholly failed to demonstrate a causal relationship between her protected conduct and these two incidents.  Because Gray offers no evidence of causation with regard to these two incidents, only temporal proximity can serve as the basis for a showing of causation.  The last activity that could qualify as protected expression, however,

took place on June 21, 2009 (Gray's EEOC Charge of Discrimination), whereas the

dispute at the staff meeting did not occur until February 24, 2010 and the alleged

bridle incident took place on March 10, 2010.[4]  Thus, and given the absence of

other evidence tending to show causation, these eight- and nine-month intervals

constitute a "substantial delay" insufficient to confer temporal-proximity causation.

*Thomas*, 506 F. 3d at 1364; *see Brown*, 597 F.3d at 1182 (explaining that even a

three-month delay is too long).  In sum, none of Gray's alleged adverse

employment actions, either taken individually or as a whole, create a genuine issue

of material fact as to whether the City retaliated against her in contravention of

Title VII.

In the contemporary American workplace, some measure of conflict between

employers and employees—wrought by the personal and professional stressors that

---

[4] We admit that we are deeply troubled by the so-called "horse-bridle" incident. Nonetheless, Gray relies solely upon double hearsay—an alleged statement by coworker Pattie Jones to Gray recounting the earlier statement of Rachal—to support her assertion that this event transpired.  Jones denies ever having made any such statement to Gray.  "On motions for summary judgment, we may consider only that evidence which can be reduced to an admissible form." *Rowell v. BellSouth Corp.*, 433 F.3d 794, 800 (11th Cir. 2005).  And though Rachal enjoyed supervisory responsibilities at the Branch and her initial statement may thus have been reducible to admissible testimony as the admission of a party opponent, Jones' statement is rank hearsay that would not have so qualified because it did not concern a matter within the scope of her agency.  *See* Fed. R. Evid. 801(c); *Wilkinson v. Carnival Cruise Lines, Inc.*, 920 F.2d 1560, 1565 (11th Cir. 1991); *Miles v. M.N.C. Corp.*, 750 F.2d 867, 874–75 (11th Cir.1985) (explaining that the admissibility of evidence concerning an alleged racial slur as vicarious admission of employer hinged on the nature of supervisory positions held by the declarant in a Title VII case). Further, because Jones denies ever having made any such statement, there is no possibility that Gray might have eliminated the hearsay problem by calling Jones at trial to testify as to what she heard Rachal say.  The district court was therefore correct to discount this alleged statement, leaving the horse bridle incident without evidentiary support.  *See Macuba*, 193 F.3d at 1323–25.

naturally occasion a group of individuals working together in close quarters—is inevitable.  *See Cotton*, 434 F.3d at 1234 ("Title VII[] is neither a general civility code nor a statute making actionable the ordinary tribulations of the working place. (alternation in original) (internal quotation marks omitted)).  On this record, Gray has failed to transmute that conflict from everyday strife into a Title VII violation sufficient to survive summary judgment.  Therefore, the judgment of the district court is affirmed.

**AFFIRMED.**

## UNITED STATES COURT OF APPEALS
## FOR THE ELEVENTH CIRCUIT

ELBERT PARR TUTTLE COURT OF APPEALS BUILDING
56 Forsyth Street, N.W.
Atlanta, Georgia 30303

John Ley
Clerk of Court

For rules and forms visit
www.ca11.uscourts.gov

October 09, 2012

MEMORANDUM TO COUNSEL OR PARTIES

Appeal Number: 12-10974-AA
Case Style: Melba Gray v. City of Jacksonville, Florida
District Court Docket No: 3:10-cv-01172-HLA-JRK

Enclosed is a copy of the court's decision filed today in this appeal. Judgment has this day been entered pursuant to FRAP 36. The court's mandate will issue at a later date in accordance with FRAP 41(b).

The time for filing a petition for rehearing is governed by 11th Cir. R. 40-3, and the time for filing a petition for rehearing en banc is governed by 11th Cir. R. 35-2. Except as otherwise provided by FRAP 25(a) for inmate filings, a petition for rehearing or for rehearing en banc is timely only if received in the clerk's office within the time specified in the rules. Costs are governed by FRAP 39 and 11th Cir.R. 39-1. The timing, format, and content of a motion for attorney's fees and an objection thereto is governed by 11th Cir. R. 39-2 and 39-3.

Please note that a petition for rehearing en banc must include in the Certificate of Interested Persons a complete list of all persons and entities listed on all certificates previously filed by any party in the appeal. See 11th Cir. R. 26.1-1. In addition, a copy of the opinion sought to be reheard must be included in any petition for rehearing or petition for rehearing en banc. See 11th Cir. R. 35-5(k) and 40-1 .

Counsel appointed under the CRIMINAL JUSTICE ACT must file a CJA voucher claiming compensation for time spent on the appeal no later than 60 days after either issuance of mandate or filing with the U.S. Supreme Court of a petition for a writ of certiorari (whichever is later).

Pursuant to Fed.R.App.P. 39, costs taxed against appellant.

The Bill of Costs form is available on the internet at www.ca11.uscourts.gov

For questions concerning the issuance of the decision of this court, please call the number referenced in the signature block below. For all other questions, please call Eleanor M. Dixon, AA at (404) 335-6172.

Sincerely,

JOHN LEY, Clerk of Court

Reply to: Jeff R. Patch
Phone #: 404-335-6161

OPIN-1A Issuance of Opinion With Costs